# D. W. VIRGIN, APPELLANT, v. GEORGE W. BRUBAKER et als., RESPONDENTS.

PRESUMPTION OF REGULARITY OF DISTRICT COURT PROCEEDINGS. Where a transcript on appeal from a district court showed that a petition for leave to intervene had been filed in the court below, and was treated by the court and all the parties as a pleading in the cause, and no order allowing such intervention appeared, it was presumed that such an order had been made.

THE SAME. Where a transcript on appeal from a judgment of a district court showed an application in the court below of the judgment plaintiff to be substituted in place of the original plaintiff, and no order of substitution appeared, such order was presumed to have been made.

PRIORITY OF MORTGAGE FOR PURCHASE MONEY. Where a person in possession of land under a bond for the execution of a deed upon the payment of the purchase money erected a building upon it, and a mechanic's lien was filed, and after the filing of the lien such person procured a deed and at the same time gave back a mortgage for the purchase money, the mortgagee having nothing to do with the building: Held, in a suit to foreclose the mortgage, in which the lien-holder intervened, that the mortgage debt was first to be satisfied out of the property.

PURPOSE OF RECORDING MORTGAGES. The purpose of the record of a mortgage is simply to give notice and prevent parties who hold encumbered real estate from imposing on innocent purchasers or subsequent mortgagees.

FINDINGS, WHAT NEED NOT CONTAIN. It is not necessary for a court to find a fact which is admitted in the pleadings.

SUBSTITUTION OF ASSIGNEE AS PLAINTIFF. Where a person claiming to be assignee of a cause of action is substituted as plaintiff, and the cause proceeds, and a judgment is rendered in his name, it is too late to object in the appellate court that he did not file a supplemental complaint, showing his interest.

SUBSTITUTION AFTER ISSUES MADE UP. After the issues in a cause are all made up, a person claiming to be assignee of the cause of action may, under Sec. 16 of the Practice Act, be substituted as plaintiff; and, if so substituted, it is not necessary for him to file a supplemental complaint.

THE SAME. Usually an assignee must allege and prove the assignment to sustain an action in his own name, but this rule does not apply to a case where an assignee of a cause of action, after the making up of the issues, is substituted as plaintiff, and the original plaintiff assents to the substitution.

ESTOPPEL IN CASE OF SUBSTITUTION. A substitution of an assignee of a cause of action in place of plaintiff will ordinarily be granted, if the plaintiff consents; the original plaintiff in such case being ever afterwards estopped from denying the transfer.

POSITION OF SUBSTITUTED PLAINTIFF. Under Sec. 16 of the Practice Act, where a person is substituted as plaintiff, he does not come in as a new party, as under the old chancery practice, but he takes the place of the original plaintiff, who ceases to be a party to the suit.

WHO MAY APPEAL. If a person is a party to a record he may appeal, and if he can show that the judgment is erroneous he will be entitled to a reversal, unless it appear affirmatively that the error cannot injuriously affect his interest.

THE SAME. If a judgment imposes costs upon a person, he is entitled to a hearing on an appeal from it.

APPEAL from the District Court of the Second Judicial District, Douglas County.

The suit was originally commenced by Samuel Singleton against George W. Brubaker and wife. After the filing of the petition of White and Chase, to be allowed to intervene, and the answer to it by Singleton, D. W. Virgin, the appellant, filed a motion to be substituted as plaintiff, based upon his affidavit that he was the owner of the note and mortgage, and of all the interest in the action theretofore claimed by Singleton, and the only real party in interest as plaintiff in the action. From the briefs of counsel it seems that the substitution was assented to by all parties; but the record is silent upon this point as well as to any formal order of

substitution. Soon after the motion a paper was filed, signed by Brubaker and wife, withdrawing any and all defense by them, and they were not represented on the appeal.

No objection appears to have been made by counsel to the want of orders in the transcript, one showing the allowance of the intervention, and the other showing the substitution of plaintiff.

The other facts and proceedings in the Court below are stated in the opinion.

*D. W. Virgin,* for Appellant, attacked the validity of the mechanic's lien claimed to be held by the intervenors White and Chase, and the regularity of the proceedings in the District Court of the Eighth Judicial District on the foreclosure of such lien. He contended further that if the lien were valid, and the proceedings to foreclose it regular, the claim under it should be held to be subsequent to and subject to the mortgage, for the reason that the deed from Singleton to Brubaker and the mortgage back for the purchase money were made simultaneously, and no claim of lien could come in between them. (*Guy* v. *Carriere,* 5 Cal. 512; *Boos* v. *Ewing et al.,* 17 Ohio, 500; 39 Missouri, 170.)

*George A. Nourse,* for Intervenors White and Chase, Respondents, contended that the appellant was not a "party aggrieved," and had no right of appeal; that as plaintiff he had no right to any judgment against either defendants or intervenors, and that inasmuch as the judgment was in his favor for a foreclosure of his mortgage, insomuch was it better than a judgment against him, and more than he was entitled to. He further contended that though appellant was substituted in place of the original plaintiff, Singleton, with the consent of both defendants and intervenors, yet such substitution did not subrogate him to Singleton's rights in the cause, and that, to entitle him to any relief, it was necessary to allege and prove the assignment or transfer to him. He further contended that the substitution of the appellant as plaintiff without any amendment or pleading showing his interest, virtually denied to the other parties their right to question the fact of such interest, and thereby took away their great constitutional guarantee not to be " deprived of property without due process of law;" which, he maintained,

vouchsafed them an opportunity to answer every allegation necessary to constitute the plaintiff's cause of action.

Counsel also made the following citations, referred to in the opinion of the Court:

Nor is there anything new in the practice which requires a supplemental complaint to be filed by a substituted plaintiff, setting up the facts which have occurred since suit brought which connect him with the subject matter of such action. Such requirement has been made ever since there was such a thing as pleading in chancery. (2 Barbour's Ch. Practice, pp. 63, 64.)

Thus where, subsequently to the filing of an original bill, some event happens which, without abating the suit, gives an interest in the matter in dispute to a person not a party to the bill, or occasions an alteration in the interest of any of the parties, the defect may be supplied by a supplemental bill. (Ibid, p. 63.)

It is a general rule that whenever an event happens which, without abating the suit, transfers the interest of a party to it, or any portion of such interest, to another, the defect thus occasioned must be supplied by supplemental bill. Therefore a party who acquires an entirely new right or interest in the subject matter of the suit by purchase, pending the litigation, may bring such right or interest before the Court by supplementary bill, or by an original bill in the nature of a supplemental bill. (Ibid, p. 64.)

*D. W. Virgin*, for Appellant, in reply, contended that as the objection to the substitution of the plaintiff had not been made in the Court below, it could not be raised for the first time in the Appellate Court. He contended further that on the substitution, the pleadings of the original plaintiff became the pleadings of the substituted plaintiff. (*Gregory* v. *Haynes*, 21 Cal. 443; *Calderwood* v. *Peyser*, 31 Cal. 333; *Moss* v. *Shear*, 30 Cal. 467; *McMinn* v. *O'Connor*, 27 Cal. 246.)

By the Court, BEATTY, C. J.

In the month of March, 1865, Samuel Singleton executed to G. W. Brubaker a bond, by which he bound himself, at the expiration of five months, to make a deed to the obligee of a certain

lot in the town of Genoa, upon the obligee's paying therefor the sum of four hundred dollars, with interest, etc.

After the execution of this bond for a deed, Brubaker entered into possession of the premises described, and commenced the erection of a hotel thereon.   White & Chase furnished him with lumber to the amount of one thousand dollars or more, and for an unpaid balance of some nine hundred and odd dollars filed a mechanic's lien thereon.

This lumber was furnished between March and August 4th of 1865.   In November, 1865, Singleton, not having received his purchase money, made a deed, and took from Brubaker and wife a mortgage to secure the purchase money.   In the month of February, 1866, White & Chase filed their bill, only making G. W. Brubaker defendant, and asking to sell the property herein mentioned, to satisfy their lien.   In December, 1866, a decree was rendered, ordering a sale of the property.

White & Chase became the purchasers at such sale, and obtained the Sheriff's certificate of sale.   This certificate was dated in March, 1867, and would have entitled them to a deed in September, 1867, but it does not appear in this record whether they ever received their deed from the Sheriff.   In September, 1866, Singleton filed his bill, making G. W. Brubaker and wife defendants, asking to have his mortgage foreclosed, alleging that the note and mortgage were given for the purchase money of the lot mortgaged.

In May, 1867, White & Chase filed a petition asking the Court to allow them to intervene in the case of *Singleton* v. *Brubaker and Wife.*   We do not find in the transcript any order allowing them to intervene, but presume from other papers, pleadings, etc., such an order must have been made.   The petition for leave to intervene seems to have been treated by all parties as a pleading on the part of intervenors.   It was demurred to and also answered by plaintiff Singleton.   Treating the petition as a pleading in the case, it amounts to first an answer and then a cross bill.   As an answer, it admits every material allegation of plaintiff's complaint.   It admits in express terms that the lot of land mortgaged belonged to Singleton when the lumber was furnished

by intervenors, and does not in fact deny anything set up in the complaint.

As a cross bill, it sets up various immaterial and irrelevant matters. Perhaps the only material facts stated are those in connection with the complaint filed against Brubaker, and the rights acquired by intervenors at the sale under a decree in that case. If these facts are true, the intervenors certainly had succeeded to the rights of Brubaker, and were proper parties to this suit.

Among other things the intervenors allege that the mortgage executed by Brubaker to Singleton was executed after Singleton had executed the deed to Brubaker, and it appears from the indorsement on the several papers, and the findings of the Court, that the mortgage was filed for record ten minutes after the deed was filed. The Court also finds that the two instruments were executed about the same time: Both instruments are set out in the transcript, they bear the same date, are acknowledged the same day, and before the same officer.

About the time the intervention was filed, Singleton seems to have sold the note and mortgage, which was the foundation of the action, to D. W. Virgin. Virgin applied to be substituted plaintiff instead of Singleton, and we may presume such order was made, though we do not find it in the transcript. In the final decree, however, his name appears as plaintiff, and we infer the Court must have made the order of substitution. The transcript comes to us showing manifest imperfections and omissions. There was also much controversy on the hearing of the case as to the regularity of the statement, and how far it could be considered by this Court. Nothing, however, in regard to the statement need be determined. Taking the facts as admitted by intervenors and respondents by their pleadings, and there is nothing to support the decree as rendered. Nor is there the slightest difficulty in determining from the pleadings themselves what the decree should have been.

The decree first establishes the right of plaintiff to have his judgment against defendant Brubaker for $428, and interest and costs, directs the sale of the property, etc., as in ordinary cases of foreclosure (with one exception which we will presently notice) ; then gives judgment in favor of intervenors against plaintiff for their

costs, and finally directs that when the sale is made it shall be expressly subject to the lien of intervenors, and declares that if the plaintiff, or those who purchase at the sale subject to this lien, fail to redeem by paying the lien within six months after the rendition of judgment in this case, they shall be forever barred and foreclosed, etc.

The intervenors, who are the only respondents represented in this Court, contend that this decree was right upon two grounds. First, the deed from Singleton to Brubaker was recorded, or filed for record, ten minutes before the mortgage was filed for record; and, Second, because the Court does not directly find that the mortgage was given for the purchase money.

The recording of a mortgage is simply for the purpose of giving notice and preventing parties who hold encumbered real estate from imposing on innocent purchasers or subsequent mortgagees. It is not contended that intervenors gave any credit or were in any way imposed on during the period of ten minutes which intervened between the recording of the two instruments. Indeed, as all the credit given by intervenors was several months before the execution of either instrument, we cannot see what right they would have to complain if the mortgage never had been recorded. It was not necessary for the Court to find a fact which is admitted in the pleadings. The complaint states distinctly that the note was given for the purchase money of the property, and the mortgage to secure the note. The only answer to this allegation is that the deed was made before the mortgage.

But, argues the respondents' counsel, " even if this decree was wrong so far as Singleton is concerned, he has not appealed." The appeal is taken by Virgin, and there is nothing in the pleadings connecting him with the case. It is not denied that an order was made substituting Virgin as plaintiff, and the decree which is signed by the Judge is entitled *Daniel W. Virgin* v. *George W. Brubaker and Mary J. Brubaker*, defendants, and *A. G. White and S. C. Chase*, intervenors.

The position of respondents is, however, that when Virgin was substituted as plaintiff, he should have filed a supplementary bill showing his interest in the case, before he could be heard. If

such were the law, then he could not properly be a party to any decree in the case until he did file such bill. If he failed, after being given the proper opportunity, to file the bill, the order allowing the substitution might be set aside, the bill dismissed for want of prosecution, or some other step taken to compel him to file the proper pleading. But certainly you cannot proceed to try a case on its merits where the real plaintiff has no complaint or other pleading on file.

Here, according to respondents' theory, is a decree subjecting Virgin to costs, and affecting property in which he claims an interest, from which he cannot appeal because he has no complaint on file. Where one is party to a record, he may appeal from it. If he can show the Court that the judgment is erroneous, he will be entitled to a reversal, unless it appear affirmatively that the error complained of cannot injuriously affect his interest. In this case the errors in the judgment are palpable. It certainly is injurious to Virgin to have a judgment against him for costs. If he has bought the mortgage, as he shows by his affidavit asking for a substitution, he certainly would be injured by other portions of the decree. If this Court cannot say that he did buy the mortgage from Singleton, for want of proper pleadings, proof or findings of fact, it certainly cannot assume the converse of that proposition.

But, according to the views entertained by this Court, when Virgin was substituted as plaintiff there was no necessity whatever for his filing any supplemental complaint. The pleadings were all filed, the issues (if there can be said to be any issues in the case) were all made up. The Court only had to determine what relief the parties were entitled to under these pleadings. In this stage of the case, Virgin comes into Court and says: " I have bought out the interest of Singleton, and wish to be made plaintiff in his room and stead." The Court, under the statute, has the discretion to make the change. If it is made, what need of a new complaint ? The question is (so far as defendant and intervenors are concerned) as to what relief is Singleton entitled under the pleadings on file and the proof that may be thereunder introduced. It is with Singleton they had the controversy, and it is none of their business what trade or transfer is made between Singleton and

Virgin. It can make no difference to them whether the judgment inures to the one or the other.

We have looked at all the cases, so far as the authorities are in the library, which we could find referred to under the one hundred and twenty-first section of the New York Code, which corresponds with our section sixteen, allowing substitutions in cases of this kind. In all those cases we cannot find one where the party applying to be substituted has been opposed by the defendant on other than two grounds, or where there has been any collision in the arguments of counsel or the opinions of Courts as to the possibility of a defendant's having more than two objections to substitution.

The one is in a case where the party asking to be substituted is not so responsible for costs, either for want of pecuniary ability, from absence, or some other cause, as the original party. In such case, the Courts have intimated, at least, they would not change the name of the plaintiff without security or some satisfactory arrangement about costs. The other class of cases is where the Courts have suspected the object of change was to make the original plaintiff a witness. In such cases they have sometimes refused to change the plaintiffs without a stipulation that the original plaintiff should not be called as a witness.

In other cases it seems to be held the change would be made as a matter of course, on the petition of the assignee of the cause of action, if the original plaintiff consented. If such was the case, the change could by no possibility hurt the defendants, for the original plaintiff would forever after be estopped to deny the transfer to the substituted plaintiff.

Usually an assignee must allege and prove the assignment to sustain an action in his own name. If it were not so, a pretended assignee might recover a judgment, and afterwards the original owner of the claim recover a second judgment for the same demand. But this could not be in the case where the original plaintiff assents to a substitution. The issues are between the original parties, and no change of pleading is required. If the judgment goes for plaintiff, it is simply entered up in the name of the assignee instead of being entered for the original plaintiff, and then assigned after judgment, as it would have been under the old practice.

The citation of respondent from Barbour's Chancery Practice has no relevancy to a case of this kind. It only points out the former method of bringing in new parties in chancery cases. Under the former chancery practice, if an assignment of the matter in controversy was made during the pending of a suit, the assignee might be brought in as a new party, but the name of the original plaintiff did not disappear. He still continued a party to the end of the suit. Under our statute the original plaintiff ceases to be a party to the suit.

We can find no case reported, either in California or New York, under statutory provision similar to ours, where it has been held that in case of substituting an assignee for the old plaintiff it has ever been held necessary to file a supplemental complaint. We can see no reason for such a course, and certainly many against it. It would certainly involve delay and unnecessary cost and trouble in filing new pleadings.

The judgment and decree of the Court below must be reversed, and the Court will enter judgment in favor of the plaintiff for the amount of his mortgage debt, interest and costs, directing the sale of the mortgaged property to pay the same. The Court will also give judgment against the intervenors for all costs occasioned by their intervention. The Court will also direct in its decree that the intervenors shall have the privilege of redeeming this property upon the same terms that are allowed to statutory redemptioners.

JOHNSON, J., did not participate in the above decision.